Case number 23-3566, USA v. Matthew Borges Argument not to exceed 15 minutes per side. Mr. Belli for the appellant. May it please the court, opposing counsel, my name is Dennis Belli. I represent Matthew Borges in an appeal related to the previous appeal you heard. I'd like to reserve two minutes of rebuttal time. Bootstrapping, shoehorning. Bootstrapping has been used in a certain context as the unjustified elevation of minor misdemeanor conduct into a felony. Shoehorning is a term that was used by another member of this court last year to explain why the government's record before the U.S. Supreme Court in a lot of these cases is so poor that they're shoehorning bad facts to try to fit within the federal statute. We would submit that both concepts were at work here in getting Mr. Borges convicted. The indictment in this case is 43 pages long. It's a speaking indictment and goes into great detail regarding the government's theory of guilt as to all the named defendants. Mr. Borges is mentioned in a few paragraphs relating to activity after HB 6 was signed into law by the governor. The indictment does not claim that he had any involvement in the alleged bribe money paid to He did anything in respect to passing the legislation. So our first three issues are all related in the sense that we are attacking the alleged predicate acts that were used to convict Mr. Borges. So the government has to prove that Mr. Borges either... Well, let me ask you about that because this is a conspiracy, right? It's not an actual substantive. So the predicate acts could be the householder predicate acts, right? In other words, if householder is bribing, even if there isn't a travel act or an honest services predicate act that your client committed, if he's part of the conspiracy, isn't he just tagged with what is proven in the other case? I mean, it's the same case, but isn't he just tagged with the other predicate acts? No. If this was a different type of conspiracy, typically this court sees drug conspiracies all the time and there's no requirement of overt acts and as long as the defendant joins in the general overarching agreement to distribute drugs, he's guilty. In a racketeering conspiracy, more is required. The government must show that the defendant agreed that either he himself or someone in the conspiracy would commit the predicate acts. So racketeering carries much harsher penalties and therefore it requires a higher burden of proof. What case are you saying to say that the agreement is different? Is that what you're saying? The agreement in conspiracy and the agreement in RICO is different? Yes. What case? Well, Hill's case, there's several cases cited in the briefs and it has to be an agreement to engage in a pattern of racketeering activity. It has to be an agreement to engage in criminal conduct in essence, right? Correct. I'm not sure why that's different. So why wouldn't Judge Nalbandian's question, the answer be yes? That if a householder committed the acts and he agreed to engage in this conduct, that that would be enough? When the court says he, are we referring to? Borges, I'm sorry. Yeah, I would agree that the government must show that Mr. Borges was part of that agreement to omit the predicate. But then he's guilty, right? Regardless of. Yes, if he has that intent, yes. But the government prosecuted Mr. Borges on a theory that he committed certain predicate acts and therefore by personally committing the acts, he necessarily agreed to commit the acts. And here in this case, well, first there's this alleged bribe. Can I ask just one question? I'm sorry. The same way, the same question Judge Nalbandian is asking, I want to ask it differently. Assume he enters the agreement and he agrees to commit certain predicate acts and the government presents those acts at trial, but they're not sufficient evidence of them. Yes. Isn't he still guilty as long as the jury accepts he joined the agreement to do so, attempted to do so, and some of the completed predicate acts or some of the predicate acts that were attempted occurred? I think that a reversal is warranted in that circumstance because the jury is presented with this theory that he personally committed the acts. But isn't that the Salinas case from the Supreme Court? Wasn't there was a RICO conspiracy and the one guard gets, maybe it's Salinas himself, he gets acquitted of the substantive acts, but then he's guilty of the conspiracy because his cohort committed them. I mean, isn't that literally this case, if you're right even about whether Borges committed the acts or not? True, but we still get into whether Borges agreed to the commission of two or more racketeering acts. But Salinas says to be convicted of conspiracy to violate RICO, the conspirator need not himself have committed or agreed to commit the two or more predicate acts, such as bribery requisite for a substantive RICO offense. I think you're getting into whether that there's no need to prove that the defendant personally committed the acts. Right. That's what Salinas may have said, but we have to look at the facts of this case. The government said Mr. Borges personally committed a travel act violation and honest services fraud violation by paying this employee of the signature collection firm. So they're saying by doing that, he also agreed to do that as part of the conspiracy. So if we are correct in our contention that that evidence doesn't support Mr. Borges' commission of those racketeering acts because they're not racketeering acts, I think that there's a problem because this is the way it was presented to the jury. But why don't you lose anyway on honest services fraud? I don't follow your argument on that because it seems to me the fiduciary points answered by footnote 41 of Skilling, which says an employer-employee relationship is an off. True, but it has to fall within the ambit of bribery. And in this case, the jury was instructed that the offense was committed if Mr. Borges paid this individual for information that his employer desired to keep secret. And we're saying that that does not rise to that level, at least as this court in United States v. Frost interpreted it. Because in Frost, there was a lot of discussion there about the attempt to deprive the University of Tennessee of a property interest, specifically college degrees. And so that whole discussion about a property interest wouldn't have been necessary if it's just any payment to an employee is automatically a bribe. But Frost was a wire fraud or mail fraud case, correct? It wasn't an honest services case. No, it was. Yes, it was. The honest services fraud has to fall under either wire fraud or mail fraud. And in that case, yeah, I believe it was mail fraud, but the same law applies to wire fraud. Didn't the head of AMT testify that this was confidential information and it was valuable to his company, that his company would suffer harm if it got out? He stated that, but it's contradicted by the agreement between the company and his own employee, which stated that information that would... Well, but our argument is that information that an employer desires to keep secret is not a protected property interest in order to fall under a federal statute. Every employer... Would a trade secret be enough? Yes. So you're just saying the degree of the confidentiality of this information wasn't enough to rise to whatever the level is? That's correct, and that is exactly the distinction that U.S. Supreme Court has... But why, and I guess I go back to Judge Thavar's question, why is that not a jury question then? Because as a matter of law, raw data, just the signature tally counts is not property. But what if the employer... What if there was a nondisclosure agreement and it was encrypted every night and only one person... I assume this same exact information, that would be enough? Are you just saying the employer wasn't doing enough to protect the data? It's just not protectable data. So no matter what he did, he could have treated it like the formula for Coke and it still wouldn't have been the formula for Coke. I think the formula for Coke is a trade secret, it's protected. What we're saying is that under federal law or state law, there's no property interest here. It is raw data. But spilling says intangible things, too. That's true, but Carpenter addressed the question of confidential business information, and it gave a specific definition there. There's another Supreme Court case that we cited that dealt with just telephone company subscriber data, and the U.S. Supreme Court said, no, that is not a property interest under the copyright laws or the trademark laws. Certainly the employer may have had a civil claim against Mr. Borges for his attempt to influence his employee, but we're talking about criminal liability, and it's just not here. Now, the government alleged that it's a violation of this state statute, which is there's no evidence that it's ever been used in the state of Ohio to prosecute someone for this type of conduct. But the government, that's why they charged this Travel Act violation, because the honest services fraud theory is so weak. And if you look at the state statute, it specifically requires that the payments be made to an employee or agent of the ballot committee, not an independent contractor out there to collect signatures. I mean, laws must give citizens adequate notice of what is prohibited by the law, and there's no notice of somebody that paying for some raw data will subject you to a conviction for a racketeering conspiracy and potentially 20 years in prison. So for those reasons, we would ask that the court reverse Mr. Borges' convictions due to insufficient evidence or erroneous jury instructions or the failure to strike from the indictment conduct that plainly does not rise to the level of a federal offense. Thank you. Ms. Zuhar, you may proceed. Thank you. May it please the court. I'll begin with private honest services fraud. As Your Honor noted, this does not require proof of a property interest. The statutory scheme and skilling foreclose that. How do you deal with Simonelli? Well, Simonelli was about whether a right to control theory of fraud under 1343 was valid. We are not under 1343. We're under 1346, dealing with intangible right to honest services fraud, and it's very clear that there's no need for property in that context under the statute. We think it's open and shut. There has to be something. I mean, basically he's paying a bribe to get information that is essentially going to be public information, right? You're going to have to disclose who these people are and validate the signatures. I'm not sure. Why is it valuable? Well, I think the AMT CEO testified why it was valuable, and it was so valuable to Mr. Gorgeous that he was willing. It just seems, okay, it's valuable. It's nonpublic, but there's no NDA, right? I mean, it's not a trade secret, right? Well, there's no requirement for it to be a trade secret. No, no, no, I'm just looking for a marker. I think the Federal Trade Secret Act has a very specific definition. It's got to have independent economic value. You have to take steps to protect it. It's got some markers. I don't really see any of those markers in this case. Well, I think that the markers are the ones that the Supreme Court and this court has laid down, and that's you've got to have a fiduciary duty that's well established in the law. Okay, do you think that every employee-employer relationship is a fiduciary relationship? No, but I think that the one here was, because here we have it. Okay, what's the line? Well, in this situation, you have an employee who is put in a position of trust, who has a duty not to disclose information that the employer wants protected, and that could economically harm the employer. So whatever that fiduciary – And he would have paid his secretary instead for the same information. Would that have created no – there wouldn't be a fiduciary relationship in that instance? If Borges had paid a secretary instead of Fuhrman, a secretary of the company, to give him this information, would that have not been a fiduciary relationship? No, I think that the secretary likely still would have had a fiduciary duty to her employer not to disclose information that could be economically damaging. Wouldn't that be true for every employee? When we're talking about information that's going to be economically damaging, perhaps. I mean, I'd note that under – So it would be every employee in America? Well, Your Honor, we don't have to decide about every employee in America. In this case, we're talking about very specific facts. And I wanted to note, this Court's decision in Frost does give us sort of another cabining principle, and that's that the breach of fiduciary duty has to be serious, right? It requires this foreseeability of economic harm. And so I think that is one tangible limit on private honest services fraud, in addition to the fact that it has to involve bribery or kickback. That would cover every employee, though, right? As it relates to the disclosure of damaging economic information. So you're saying you're not cabining who falls within, you're just cabining what the fiduciary relationship itself is. Well, this Court cabined what kind of breach of fiduciary duty was necessary. And I think in Skilling, it said that this employee-employer relationship is a fiduciary duty that's, quote, beyond dispute, to use Skilling's words. So even if Your Honor has concerns about this, we are absolutely in the heartland of what has been sanctioned for private honest services fraud. So I want to make sure I understand what you're saying. You're saying that in terms of defining the fiduciary relationship, it's basically inextricably tied to whatever needs to be protected. In other words, if there is an employee and they have a responsibility to keep something confidential and they know that there could be an economic harm, then that's what gives rise to the fiduciary relationship? No, I think that the fiduciary relationship adheres in the employee-employer relationship. That's what Skilling says. So just if you're an employee, you have a fiduciary duty, based on Skilling. That's what you're saying. Well, Skilling suggests that. Now, Frost imposes an additional limitation on that. I mean, Skilling did say that employee-employer relationships are, quote, of the sort that are beyond dispute. The fact of the matter is the court doesn't need to reach that because of the... Just accept that, right, because Skilling said it. So we don't look to the fact that Ohio might not treat these as fiduciary relationships. That's irrelevant to our analysis. Well, Your Honor, Skilling suggested that federal standards govern, and this court in Frost said that federal law governs the existence of a fiduciary duty. So, wait, is that federal common law we look to? I believe that's what the court was talking about. Now, I would note that, as we said in our brief, we believe that we meet Ohio's standard too, but I don't think that that's the law that controls. I think that it's the federal fiduciary duty that controls. Thanks. Can I ask you about the guilty pleas? I'm just curious about it. It's weird here that the defense was willing, and I can't remember whether it was both of them, so tell me if it wasn't Borges, and then I'll be quiet, but that they were willing. This was for Cespedes, and is it Longstreth? I can't remember. The guilty pleas came in, and they said we'll stipulate. We don't want them in. Why do they still come in? That's what I'm trying to figure out. You're talking about the admission of guilt. I think that the case law that we cited, and it's fairly well established, is that impeachment is presumed when you have a witness who's on the witness stand who's talking about crimes that they've committed. I'm sorry to interrupt you, but that's usually the defense attorney that does that. So this is just an odd posture, right, where you have the defense saying, no, we're not going to impeach with that, we don't want it in, and the court's still letting it in because the government wants it in. It seems like you're using it affirmatively to show the conspiracy existed. I don't think so, Your Honor. I think that we were showing it because their credibility was going to be attacked and because if the fact of the guilty plea, now the agreements did not come in, just the fact of the guilty pleas. If the fact of the guilty pleas didn't come in, then the jurors sitting there would have a whole lot of questions in their mind and perhaps be a little bit distrusting of the United States in terms of why we have witnesses up there who are talking about being involved in the same conspiracy that the defendants who are on trial are. I'd also note that the jury did get an instruction on this and were instructed that they could not use that evidence as substantive evidence of the defendant's guilt. Any further questions? What about these arguments about whether the agreement hinges on him committing the predicate acts? Do you agree with that? I'd agree with Your Honor's recitation of Salinas and this court's decision in Rich. You don't need to prove that Borges himself committed any of these, the honest services or the travel act, in order to tag him with the conspiracy. I'd agree with that, but I'd also note that we have about 20 federal money laundering predicates that we also approved. But no, the government in closing I think made clear that they were relying on public official bribery predicates that were not committed by Mr. Borges in addition to his own predicate acts. And under the law, as in Salinas, you can go both ways. But in this case, we have many individual predicate racketeering acts that Mr. Borges himself committed, federal money laundering, travel act, private honest services fraud. In addition to the public official bribery, where he knew about that, he entered into the conspiracy, he agreed to further the conspiracy, and that's the Salinas and the Rich line of cases that Your Honor mentioned. If there are no further questions, we ask the court to affirm. Thank you. Thank you, counsel. I have two minutes here. I'll try to make some quick points. Oh, respect to the guilty, please. Mr. Householder raised the argument, and Borges joined in that argument. So we believe it is an important argument. In Simonelli, the U.S. Supreme Court said that mere information is not a protected property interest. And, of course, that's a traditional wire fraud prosecution. Simonelli could have overruled skilling. In fact, Justice Thomas was in the concurrence in skilling, blasting skilling on this point, and it didn't. I don't even think it mentioned skilling. So it didn't affect honest services fraud. No, it didn't. It's a traditional fraud prosecution. But the government in Borges' case tried to circumvent this general concept that information is not a protected property interest by saying, well, under honest services fraud, we don't have to prove that. But then the government is stuck with this court's decision in U.S. which said, okay, we'll look at the fiduciary duty element here, violating the fiduciary duty. And in this case, the fiduciary duty is an employee's duty to protect the property interest of his employer. So it's a workaround, but they're still stuck with the requirement that they have to show that the object of the bribe or the theft was a protected property interest and this raw data, which according to the employment contract between the employee and the employer was not protected because it would eventually become public information. And if I may just address this foreseeability of harm, that's a requirement under Frost. The testimony showed that Borges asked Mr. Furman, the employee, do you have a nondisclosure agreement? And he assured him that he didn't. And the CEO of the signature collection firm was unable to identify any economic harm to his company. He spoke in generalities, but then he's bragging about how his company had the best year ever when he testified. Counsel, your time's up. We understand your argument. Anything further? Okay, thank you very much. Thank you both very much. The case will be submitted.